IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 13, 2025

## WOODIE JEANETTE ARENDALL v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2015-A-198    Khadija L. Babb, Judge**

_____

**No. M2024-01190-CCA-R3-PC**

_____

The Petitioner, Woodie Jeanette Arendall, pled guilty to one count of aggravated child neglect, and the trial court sentenced her to serve fifteen years' imprisonment. Thereafter, the Petitioner filed a petition for post-conviction relief alleging that she was denied the effective assistance of counsel during the plea process. Following a hearing, the post-conviction court denied relief, and the Petitioner appealed. Upon our review, we respectfully affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Criminal Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which J. ROSS DYER and KYLE A. HIXSON, JJ., joined.

Leah R. Wilson, Nashville, Tennessee, for the appellant, Woodie Jeanette Arendall.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Christopher Buford, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

# FACTUAL BACKGROUND

## A.    THE INDICTMENT AND PLEA AGREEMENT

On April 13, 2017, the Petitioner pled guilty to one count of aggravated child neglect, a Class A felony. In exchange for the plea, the State dismissed the remaining charges of aggravated child abuse and aggravated child neglect, and the trial court imposed a sentence of fifteen years' imprisonment with a release eligibility of seventy percent.

During the plea hearing, the court placed the Petitioner under oath and reviewed the terms of the agreement. The Petitioner confirmed that she understood the agreement, had reviewed it with trial counsel, and was satisfied with counsel's representation. She denied being under the influence of drugs or suffering from mental illness and stated that no one had threatened her or made her promises in order to induce the plea. She acknowledged that she understood her constitutional rights, including the right to a jury trial, and agreed to waive those rights by entering a guilty plea.

The prosecutor then presented the factual basis for the plea. According to the State, the victim's mother left the six-month-old victim in the Petitioner's care beginning December 17, 2013, and the child remained in her care until January 18, 2014. On January 18, the Petitioner contacted the mother to report that the victim's arm was swollen. The mother and the Petitioner took the victim to Skyline Medical Center, where staff diagnosed a fractured elbow. The victim was then transferred to Vanderbilt University Medical Center, where seventeen fractures at varying stages of healing were revealed. A member of the hospital's care team concluded that the injuries were consistent with physical abuse. An investigation then determined that the injuries occurred during the month that the victim was in the Petitioner's care. When asked by the trial court whether the summary of the facts was "basically true," the Petitioner responded, "Yes, Your Honor."

The trial court accepted the plea after finding it to be knowing and voluntary. The court entered the judgment the same day and imposed the fifteen-year sentence as outlined in the agreement.

2

## B.    PETITION FOR POST-CONVICTION RELIEF

On March 12, 2018, the Petitioner filed a pro se petition for post-conviction relief, which was later amended by appointed counsel on August 23, 2022. The Petitioner asserted that trial counsel provided ineffective assistance by failing to communicate with her, share discovery materials, or investigate defense witnesses. She also alleged that trial counsel failed to consider her mental health and drug use, misinformed her about the consequences of the plea, and pressured her to accept it.

The post-conviction court held an evidentiary hearing on December 7, 2023. The Petitioner and trial counsel both testified.

### 1.    Testimony of the Petitioner

The Petitioner testified that she pled guilty to aggravated child neglect and received a sentence of fifteen years to serve with a release eligibility of seventy percent. She stated that trial counsel was appointed to her case at the outset and remained her counsel until the plea. She asserted that she did not receive discovery materials while on bond and that trial counsel repeatedly told her there was "no case" against her.

The Petitioner claimed that, just before trial, trial counsel informed her that she would need to plead guilty to the child neglect charge because she had lied about who lived in her home. She testified that trial counsel further told her that the State would dismiss the other charges and that she would only serve two years before she was released on probation. She stated that, at the time of the plea, she believed she would not serve a full prison term and would not have pled guilty if she had known that she would do "all this time in prison."

The Petitioner also testified that trial counsel failed to contact several witnesses she had identified. She said those witnesses could have testified about the events on January 18, 2014, and would confirm that she was not present at the scene.

On cross-examination, the Petitioner admitted that she told the trial court she was not under the influence of drugs or suffering from mental illness, but she claimed those statements were false. She further testified that she was "strung out on Opanas and Xanax" during the plea and had a history of mental illness for which she had been treated at Vanderbilt. The Petitioner said she followed trial counsel's instructions during the plea and feared being held in contempt if she asked questions. She confirmed that she did not tell

trial counsel that she disagreed with what was said in court, nor did she seek clarification during the plea colloquy.

### 2.     Testimony of Trial Counsel

Trial counsel testified that he had practiced law since 1999 and handled thousands of criminal cases, including more than fifty jury trials. He stated that he met with the Petitioner at least six times outside of court and discussed the facts of the case with her. He testified that he provided the Petitioner with a copy of the discovery materials.

According to trial counsel, the Petitioner provided him with the names of nine witnesses, and he directed his investigator to interview them. The investigator either recorded or gave trial counsel a formal report on each interview, and trial counsel discussed the interviews with the Petitioner. Trial counsel said the Petitioner appeared to understand the case and did not show signs of impairment or confusion.

Trial counsel explained that plea negotiations began shortly before trial at the request of the Petitioner's mother. He then contacted the State, received an offer, and communicated the terms to the Petitioner. Trial counsel denied telling her she would serve only two years or be released on probation. He also stated that he never saw any indication that she was under the influence of drugs or was unable to comprehend the proceedings.

### 3.     Post-Conviction Court's Findings

On July 31, 2024, the post-conviction court entered a written order denying relief and concluding that the Petitioner failed to prove either deficient performance or prejudice under the standard for ineffective assistance of counsel. The court found that trial counsel had diligently prepared the case for trial, interviewed witnesses, and provided the Petitioner with the discovery materials. The court credited trial counsel's testimony over the Petitioner's, particularly where her testimony conflicted with her statements made under oath during the plea hearing. The court also noted that she had not presented any of the proposed witnesses at the post-conviction hearing, undermining her claims of prejudice.

The Petitioner filed a timely notice of appeal on August 7, 2024. *See* Tenn. R. App. P. 4(a).

# ANALYSIS

The Tennessee Post-Conviction Procedure Act provides an avenue for relief "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2018). A post-conviction petitioner has the burden of proving his or her allegations of fact by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2018). For evidence to be clear and convincing, "it must eliminate any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Arroyo v. State*, 434 S.W.3d 555, 559 (Tenn. 2014) (citation and internal quotation marks omitted).

In this case, the Petitioner generally challenges the validity of her guilty plea. Our supreme court has recognized that "[t]he validity of a guilty plea is a mixed question of law and fact." *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010). As such, our review of whether the Petitioner entered a valid guilty plea in this case is de novo, applying a presumption of correctness only to the post-conviction court's findings of fact. *Holland v. State*, 610 S.W.3d 450, 455 (Tenn. 2020).

## A. QUESTION PRESENTED

As an initial matter, we must address what issues we are called upon to decide in the context of the Petitioner's plea. Tennessee Rule of Appellate Procedure 27(a)(4) requires the appellant to include "[a] statement of the issues presented for review" in his or her appellate brief. In part, this self-evident requirement keeps the appellate courts from "searching for hidden questions" and allows them "to know immediately what questions they are supposed to answer." *Hodge v. Craig*, 382 S.W.3d 325, 334 (Tenn. 2012) (citing Bryan A. Garner, *Garner on Language and Writing* 115 (2009); Robert L. Stern, *Appellate Practice in the United States* § 10.9, at 263 (2d ed. 1989)).

To that end, we have recognized that the Rules of Appellate Procedure do "not contemplate that an appellant may submit one blanket issue as to the correctness of the judgment and thereby open the door to argument upon various issues which might affect the correctness of the judgment." *State v. Williams*, 914 S.W.2d 940, 948 n.5 (Tenn. Crim. App. 1995) (also citing as an example of an improperly broad issue statement, "Did the Trial Court err in dismissing the plaintiffs' action prior to trial?"). Because broad issue statements often fail to provide fair notice of what grounds for relief are advanced, they can be unfair to the appellee and may improperly place this court in the position of

constructing a litigant's case or arguments for him or her. *See Trezevant v. Trezevant*, 696 S.W.3d 527, 531 (Tenn. 2024); *State v. Francis*, No. M2022-01777-CCA-R3-CD, 2024 WL 4182870, at *3 (Tenn. Crim. App. Sept. 13, 2024), *no perm. app. filed*.

In her brief, the Petitioner identifies a single issue presented: "Whether the Trial Court Erred in Dismissing Appellant's Petition for Post-Conviction Relief." This broad, undifferentiated issue statement does not identify particular errors or issues that form the basis for her request for appellate relief. Statements such as these run the unnecessary risk of waiving claims for relief on appeal. *Trezevant*, 696 S.W.3d at 531; *State v. Holmgren*, No. M2023-00795-CCA-R3-CD, 2024 WL 2891416, at *3 (Tenn. Crim. App. June 10, 2024) ("Because we cannot determine with any certainty what grounds for relief *are* presented for review, we respectfully decline to address issues we think *might* be raised for relief." (emphasis in original)), *no perm. app. filed*. That said, the supreme court has recognized that the appellant's argument may refine a broad issue statement, such that "issues and argument taken together [may] clearly present the grounds for appellate relief[.]" *Trezevant*, 696 S.W.3d at 531.

Looking to the Petitioner's arguments, she clearly alleges that her plea was unknowing and involuntary because of trial counsel's ineffective assistance. However, aside from this context, it is not clear that the Petitioner asserts other reasons for the invalidity of her plea.

For example, although the Petitioner mentions mental health and substance use issues during her plea, she does so only in the context of her lawyer's actions. Moreover, none of the cases cited by the Petitioner address the constitutional requirements necessary to enter a valid plea. *See, e.g.*, *Boykin v. Alabama*, 395 U.S. 238, 243 (1969); *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977). Instead, every case she has cited relates to claims of ineffective assistance of counsel outside of the plea context.

Accordingly, the Petitioner's challenge to the validity of her plea does not clearly extend beyond her claim that she was denied the effective assistance of counsel during the plea process. As such, we limit our review to those issues alone. *See, e.g.*, *State v. Bristol*, 654 S.W.3d 917, 923 (Tenn. 2022) ("[A]n appellate court's authority 'generally will extend only to those issues presented for review.'" (quoting Tenn. R. App. P. 13(b)).

## B.    INEFFECTIVE ASSISTANCE OF COUNSEL

Article I, section 9 of the Tennessee Constitution establishes that every criminal defendant has "the right to be heard by himself and his counsel." Similarly, the Sixth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." "These constitutional provisions guarantee not simply the assistance of counsel, but rather the reasonably effective assistance of counsel." *Nesbit v. State*, 452 S.W.3d 779, 786 (Tenn. 2014).

"[D]uring the plea bargain process, as at all critical stages of the criminal process, counsel has the responsibility to render effective assistance as required by the Sixth Amendment." *Id.* at 787. Thus, plea counsel's "effectiveness may implicate the requirement that a plea must be entered knowingly and voluntarily, *i.e.*, that the petitioner made the choice to plead guilty after being made aware of the significant consequences of such a plea." *Johnson v. State*, No. W2015-02498-CCA-R3-PC, 2017 WL 192710, at \*4 (Tenn. Crim. App. Jan. 17, 2017), *no perm. app. filed*; *see State v. Nagele*, 353 S.W.3d 112, 118 (Tenn. 2011) (recognizing that where a defendant's guilty plea "is not equally voluntary and knowing, it has been obtained in violation of due process and must be set aside." (citation and internal quotation marks omitted)). Stated another way, once a defendant enters a guilty plea, the effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. *See Hill*, 474 U.S. at 56 (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).

"To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that counsel's performance was deficient and that counsel's deficiency prejudiced the defense." *Moore v. State*, 485 S.W.3d 411, 418-19 (Tenn. 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). A petitioner may establish that counsel's performance was deficient by showing that "'counsel's representation fell below an objective standard of reasonableness.'" *Garcia v. State*, 425 S.W.3d 248, 256 (Tenn. 2013) (quoting *Strickland*, 466 U.S. at 688).

To establish prejudice, a petitioner "must establish 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Davidson v. State*, 453 S.W.3d 386, 393-94 (Tenn. 2014) (quoting *Strickland*, 466 U.S. at 694). In the context of a guilty plea, the analysis of prejudice

7

focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill*, 474 U.S. at 59; *see also Taylor v. State*, 443 S.W.3d 80, 84-85 (Tenn. 2014). Because a post-conviction petitioner bears the burden of establishing both deficient performance and resulting prejudice, "a court need not address both concepts if the petitioner fails to demonstrate either one of them." *Garcia*, 425 S.W.3d at 257.

In this case, the Petitioner argues that she was denied the effective assistance of counsel before entering her plea. More specifically, she asserts that trial counsel failed to communicate with her, including failing to share discovery materials with her. She also contends that trial counsel failed to investigate defense witnesses or consider her mental health and substance use issues. She further maintains that he misinformed her about the consequences of the plea and pressured her into accepting it. We address each of these issues in turn.

### 1.      Failure to Communicate with the Petitioner

The Petitioner first asserts that trial counsel rendered ineffective assistance by failing to communicate with her and failing to share pretrial discovery materials. The State responds that the Petitioner's argument is not supported by the post-conviction court's findings or the record as a whole. We agree with the State.

When a post-conviction petitioner asserts that trial counsel did not adequately communicate information, we have recognized that

an analysis of trial counsel's performance in consulting with a client is directed to how trial counsel was able to impart and receive important information—such as, among other things, the facts of the case, the application of the law, significant case developments, and the petitioner's objectives—so that counsel and the petitioner could make informed decisions about the case.

*Hall v. State*, No. M2021-01555-CCA-R3-PC, 2023 WL 2726780, at *7 (Tenn. Crim. App. Mar. 31, 2023), *no perm. app. filed*.

In this case, the post-conviction court found that trial counsel met with the Petitioner at least six times, reviewed the discovery, and discussed the witness statements with her. The court concluded that this preparation was consistent with a plan to proceed to trial and that the Petitioner offered no credible proof to the contrary. The record fully supports these findings.

The Petitioner does not identify, and the record does not reveal, what effect additional meetings and discussions would have had on the case. For example, the Petitioner failed to show how additional communication with trial counsel would have affected their trial strategy. *See Bishop v. State*, No. W2017-00709-CCA-R3-PC, 2018 WL 2228195, at *6 (Tenn. Crim. App. May 15, 2018), *perm. app. denied* (Tenn. Sept. 17, 2018). She did not show that additional meetings would have resulted in counsel being better prepared for trial. *See Williams v. State*, No. M2007-02070-CCA-R3-PC, 2008 WL 5272556, at *5 (Tenn. Crim. App. Dec. 19, 2008), *perm. app. denied* (Tenn. Apr. 27, 2009). She also made no showing that, because of the lack of meetings or communications with trial counsel, she was "unable to make an informed decision" about how to proceed with the case. *McWilliams v. State*, No. E2017-00275-CCA-R3-PC, 2017 WL 5046354, at *4 (Tenn. Crim. App. Nov. 2, 2017), *no perm. app. filed*.

Ultimately, the Petitioner has not made any showing that "better communication with [her] trial counsel or better involvement of Petitioner in trial preparation could have altered the outcome of the case." *Tate v. State*, No. W2019-01380-CCA-R3-PC, 2020 WL 1972586, at *4 (Tenn. Crim. App. Apr. 24, 2020), *perm. app. denied* (Tenn. Sept. 21, 2020). We affirm the post-conviction court's denial of relief on these grounds.

## 2. Failure to Investigate Witnesses

The Petitioner next contends that trial counsel rendered ineffective assistance by failing to investigate her witnesses. The State responds that the Petitioner has failed to show prejudice by not calling these witnesses to testify at the post-conviction hearing. We again agree with the State.

"Trial counsel has a duty to investigate and prepare a case, and this duty derives from counsel's basic function to make the adversarial testing process work in the particular case." *Nesbit*, 452 S.W.3d at 796 (citation and internal quotation marks omitted). Counsel's duty is "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (quoting *Strickland*, 466 U.S. at 691). However, this duty of reasonable

investigation "does not require that counsel leave no stone unturned." *Cribbs v. State*, No. W2006-01381-CCA-R3-PD, 2009 WL 1905454, at *48 (Tenn. Crim. App. July 1, 2009), *perm. app. denied* (Tenn. Dec. 21, 2009). Instead, "[r]easonableness should be guided by the circumstances of the case, including information provided by the defendant, conversations with the defendant, and consideration of readily available resources." *Id.*; *Pence v. State*, No. E2019-01942-CCA-R3-PC, 2021 WL 857612, at *8 (Tenn. Crim. App. Mar. 8, 2021), *no perm. app. filed.*

That said, when a petitioner alleges that trial counsel failed to conduct an adequate investigation, "the petitioner is obligated to show what a reasonable investigation would have revealed." *Olive v. State*, No. M2023-00719-CCA-R3-PC, 2024 WL 2797015, at *8 (Tenn. Crim. App. May 31, 2024), *perm. app. denied* (Tenn. Oct. 24, 2024). Thus, in the context of a claim that trial counsel "failed to discover, interview, or present witnesses in support of his [or her] defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990); *Taylor*, 443 S.W.3d at 85 (citation and internal quotation marks omitted).

In this case, the post-conviction court found that trial counsel's investigator interviewed the witnesses identified by the Petitioner and that trial counsel later reviewed these interviews with her. The post-conviction also found that the Petitioner failed to show any prejudice from her allegations because she did not call these witnesses to testify at the post-conviction hearing.

Accepting the credibility findings of the post-conviction court, the record contains no evidence that trial counsel was ineffective in failing to interview the Petitioner's identified witnesses. Moreover, "[n]either this court nor a post-conviction court may speculate about the substance of the records or the substance of any witness testimony which is not introduced at the evidentiary hearing." *Millan v. State*, No. E2021-00366-CCA-R3-PC, 2023 WL 1489780, at *33 (Tenn. Crim. App. Feb. 3, 2023), *no perm. app. filed*. As such, we affirm the post-conviction court's denial of relief on these grounds.

### 3. Failure to Consider the Petitioner's Mental Health and Substance Use Addiction

The Petitioner next argues that trial counsel rendered ineffective assistance by failing to consider her issues with mental health and substance use addiction. She alleges that she was "under the influence of drugs and suffering from mental health issues." The

State responds that the Petitioner's argument is not supported by the post-conviction court's findings or the record as a whole.  We agree with the State.

When a petitioner asserts that his or her mental health issues affected the plea, the petitioner should offer "independent corroboration that he [or she] was incapable of making a rational decision."  *Burrell v. State*, No. M2015-02115-CCA-R3-PC, 2017 WL 943363, at *11 (Tenn. Crim. App. Mar. 9, 2017), *no perm. app. filed*.  For example, the petitioner should present medical evidence to corroborate the claim that a mental health impairment rendered the plea unknowing or involuntary.  *See Buie v. State*, No. M2022-01232-CCA-R3-PC, 2024 WL 242791, at *5 (Tenn. Crim. App. Jan. 23, 2024), *no perm. app. filed*.  This proof could include, for example, evidence from mental health records or from a mental health professional attesting that the petitioner suffered from a mental health condition that affected the petitioner's cognitive abilities or his or her level of understanding.  *See Mack v. State*, No. E2019-00273-CCA-R3-PC, 2021 WL 753643, at *6 (Tenn. Crim. App. Feb. 26, 2021), *no perm. app. filed.*

The post-conviction court credited trial counsel's testimony that he was "never made aware of any drug issues."  It also noted his testimony that "he never had any indication that the Petitioner was impaired or unable to comprehend the provided information."  Accepting the credibility findings of the post-conviction court, we conclude that the record supports these findings.  Moreover, the Petitioner failed to offer any independent corroboration that a mental health issue or substance use addiction rendered her incapable of making a rational decision.  Accordingly, we affirm the post-conviction court's denial of relief on these grounds.

### 4. Failure to Inform the Petitioner About the Consequences of the Plea

The Petitioner next argues that trial counsel rendered ineffective assistance by failing to inform her of the consequences of the plea, including "how much time she was actually going to serve and the parole repercussions."  The State does not respond to this argument specifically but generally asserts that the claim of deficient performance is not supported by the post-conviction court's credibility findings.  We agree that the Petitioner is not entitled to relief on these grounds.

Our supreme court has recognized that trial counsel has a duty to "ascertain the status of the law" and to advise a defendant about the consequences of various dispositions. *See Grindstaff v. State*, 297 S.W.3d 208, 220 (Tenn. 2009).  Indeed, the court has cited the

11

American Bar Association's *Standards for Criminal Justice: Prosecution and Defense Function* (3d ed. 1993) as helping to inform this duty:

> Defense counsel's preparation should also include familiarization with the court's practices in exercising sentencing discretion, the practical consequences of different sentences, and the normal pattern of sentences for the offense involved, including any guidelines applicable at either the sentencing or parole stages. The consequences of the various dispositions available should be explained fully by defense counsel to the accused.

*Calvert v. State*, 342 S.W.3d 477, 488 (Tenn. 2011); *Missouri v. Frye*, 566 U.S. 134, 145 (2012) ("Though the standard for counsel's performance is not determined solely by reference to codified standards of professional practice, these standards can be important guides.").

In this case, the post-conviction court credited trial counsel's testimony about his efforts to explain the plea agreement to the Petitioner. The court observed that trial counsel discussed the terms of the plea agreement with the Petitioner and had her initial each paragraph of the written plea petition. Trial counsel explained the fifteen-year sentence and the seventy-percent release eligibility to the Petitioner and confirmed the parole calculation with her in writing. Accepting the credibility findings of the post-conviction court, the record contains no evidence that trial counsel was deficient in advising the Petitioner about the consequences of the plea. We affirm the post-conviction court's denial of relief on these grounds.

### 5. Pressuring the Petitioner to Accept the Plea

Finally, the Petitioner asserts that trial counsel rendered ineffective assistance by pressuring her to accept the terms of the plea. The State responds that nothing in the record shows that the plea was unknowing or involuntary because of any coercion or pressure by trial counsel. We agree with the State.

The post-conviction court made an express finding that "there is no credible proof that [trial counsel] pressured the Petitioner to accept the plea offer." The record and credited testimony fully support this finding. Moreover, apart from asserting the claim itself, the Petitioner does not identify in her appellate brief how trial counsel pressured her into accepting the plea. As such, we affirm the post-conviction court's denial of relief on these grounds.

## CONCLUSION

In summary, we hold that the record supports the post-conviction court's finding that the Petitioner was not denied the effective assistance of counsel during her guilty plea and that her plea was knowingly and voluntarily entered. Accordingly, because the Petitioner's conviction is not void or voidable because of the violation of a constitutional right, we respectfully affirm the denial of post-conviction relief.

s/ *Tom Greenholtz*

TOM GREENHOLTZ, JUDGE